UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MARCUS KELLEY,

                Plaintiff,                Case No. 2:14-cv-117

v.                                            Honorable R. Allan Edgar

KIMBERLY ATKINSON,

                Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Atkinson, Unknown Health Care Parties, Rafaele, MacLaren, Reynolds, Olson, Benard, Malette, Belinger, Corrigan, Heyns, Louri, Decker, Mavi, Suite, and Unknown Mailroom Employee. The Court will serve the complaint against Defendants Frazier, Carrick, Zimmerman, Parr, Cowan, Nettleston, MacClean, Suriano, Lewis, Chappa, Esslin, Johnson,

and McClean.

## Discussion

I.  Factual allegations

Plaintiff Marcus Kelley, a state prisoner currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Assistant Deputy Warden Kimberly Atkinson, Corrections Officers Frazier, Carrick, Zimmerman, Parr, Cowan, Nettleston, Reynolds, MacClean, Chappa, Unknown Health Care Parties, Lieutenant Rafaele, Warden Duncan MacLaren, Assistant Deputy Warden Olson, Assistant Resident Unit Supervisor Benard, Resident Unit Manager Malette, Deputy Belinger, Assistant Resident Unit Supervisor Suriano, Inspector J. Corrigan, Lieutenant Lewis, MDOC Director Daniel H. Heyns, Sergeant Louri, Sergeant Esslin, Resident Unit Manager Decker, Sergeant Johnson, Sergeant McClean, Sergeant Mavi, Deputy Suite, and Unknown Mailroom Employee.

In his amended complaint, Plaintiff claims that on November 8, 2013, Defendant Bruni informed him that he was scheduled for a deposition on November 11, 2013, via teleconference. On November 11, 2013, Plaintiff arrived for the deposition at 12:51 pm and informed officers of the 1:00 pm deposition. Plaintiff was told that it was a holiday. Plaintiff asked Defendant Bruni to call his attorney, to no avail. Finally at 2:45 pm, Corrections Officer Kerckaert notified Plaintiff that he could go to the deposition. Plaintiff states that he was only allowed to attend the final 10 minutes of the deposition. Plaintiff filed a grievance against Defendant Atkinson regarding this denial because she was responsible for scheduling teleconferences. Defendant Atkinson received Plaintiff's grievance, despite the fact that it had been filed on her. Defendant Lewis reviewed the grievance and yelled obscenities at Plaintiff, denying him any investigation.

Defendant MacLaren denied Plaintiff any relief.

Plaintiff states that as a result of the grievance he filed on Defendant Atkinson, he has been continuously harassed and threatened with physical violence by multiple officers and that legal correspondence, such as mail from attorney Paulette Michel, continues to be rejected. Plaintiff states that on February 28, 2014, he had only 21 days to submit a motion for reconsideration to the Michigan Supreme Court. Plaintiff gave it to Defendant Bruni for mailing on March 18, 2014, but it was not actually mailed until March 20, 2014. Plaintiff only received one out of three pieces of legal mail from Attorney Paulette Michel, the other two were rejected and returned to Michel.

On March 2, 2014, Plaintiff was helping inmate Richards shave because he did not know how to use the beard trimmers. Defendant Parr burst into the restroom and asked to see Plaintiff's I.D. Plaintiff was subsequently written a misconduct for being an accomplice to out of place because Richards was assigned to a different unit. Plaintiff claims that he was unaware that Richards was assigned to another unit. Later that day, Defendant Cowan asked Plaintiff if there was a problem. During the 4 pm count, Defendant Nettleston stated, "For real Kelley! Are you serious?" Defendant Nettleston then slammed Plaintiff's door and left. Defendant Cowan then came and told Plaintiff to get his "Fagget [sic] ass" to the counselor's office. Once Plaintiff reached Defendant Bruni's office, he saw Defendant Nettleston sitting at the desk. Defendant Nettleston told Plaintiff to ask the counselor to go to protective custody and stated, "We know about you! We're going to make your life a living hell.!" When Plaintiff protested, Defendant Nettleston told Plaintiff, "We will shake your cell down and fuck up you and your cellmates shit every day until they decide to fuck you up, and that's only part of your misery."

Plaintiff states that he has been harassed by various Corrections Officers and that his

3

cell has been shaken down at least once a day, sometimes twice a day, leaving his property in disarray. Plaintiff states that some of his property has come up missing, including legal property and photos and addresses of family and friends. On March 10, 2014, Plaintiff had a hearing on the "accomplice to out of place" misconduct ticket before Defendant Rafaele, who found Plaintiff guilty despite a lack of any evidence to support the charge. Plaintiff was denied any witnesses, including inmate Richards. When Plaintiff requested a witness, Defendant Rafaele shouted, "I'm not giving you a witness! I don't have to and I'm not! I believing [sic] my officers!"

On March 13, 2014, Plaintiff sent letters to the Ombudsman, Internal Affairs, Defendant MacLaren, Attorney Racine Miller, and his mother. On March 14, 2014, Plaintiff was awakened by Defendant Parr and told to go to the annex for review of a misconduct ticket. When Plaintiff arrived, he was met by Defendant Johnson, who showed Plaintiff a misconduct written by Defendant Frazier. The misconduct stated that Plaintiff had been using the kiosk machine while on loss of privileges. However, Plaintiff was in the library at the time of the alleged misconduct, and this was confirmed by Defendant Johnson, who ripped up the ticket. Plaintiff then wrote a grievance on Defendant Frazier for falsifying a misconduct ticket. On March 15, 2014, Plaintiff was again called to the annex for review of a ticket written by Defendant Frazier. This ticket asserted that Plaintiff had used the Jpay kiosk while on loss of privileges on the same date as the first ticket, but five minutes later. Plaintiff protested to Defendant Johnson that the ticket was written after Plaintiff filed a grievance on Defendant Frazier, but Defendant Johnson stated that she did not want to deal with it.

On March 26, 2014, Plaintiff was scheduled to see an eye doctor at 2:00 pm. Plaintiff arrived at healthcare at 2:06 pm and Defendant Chappa told Plaintiff to leave and that the eye doctor

did not want to see him. Plaintiff was told that if he did not leave, he would be going to the "hole." Plaintiff complied.

Plaintiff states that he was denied medical attention on an ongoing basis and at the end of March 2014, he was moved from cell B-2-59 to cell E-2-8. While in E-2-8, Plaintiff received fabricated misconduct tickets. On March 31, 2014, Defendant Carrick wrote a ticket on Plaintiff asserting that he had seen Plaintiff running from an unauthorized area on the unit. On April 1, 2014, Defendant Wollan told Plaintiff that if he pleaded guilty and took 5 days loss of privileges, Defendant Wollan would get his co-workers to leave Plaintiff alone. Plaintiff agreed, but continued to be subjected to harassment and retaliation from staff.

On April 2, 2014, Defendant Malette found Plaintiff "not guilty" of a misconduct written by Defendant Frazier. On April 10, 2014, Deputy Warden Harwood denied Plaintiff's appeal on the "Accomplice to Out of Place" ticket in violation of Plaintiff's due process rights. On April 11, 2014, Plaintiff was moved for the second time in 30 days. After the move, Corrections Officer Wallis approached Plaintiff and shouted in his face:

> I heard about your lawsuit against Oakland County! Every time a criminal gets in trouble with the law, he claims the officers assaulted him! Well I'll tell you what, I don't like your kind. In fact, I bet you made that shit up! Just like you made all this shit up about officers here allegedly harassing you! Your [sic] going to get yours!

On April 12, 2014, Corrections Officer Wallis saw Plaintiff reading the posted rules and asked him what he was doing. Plaintiff said he did not want any problems and Corrections Officer Wallis stated "Get the fuck out of here nigger! I've been itching to use this tazer on you!" Plaintiff claims that Defendant Suriano refuses to send out his legal mail, repeatedly telling Plaintiff to "come back later."

Plaintiff was placed on "Penicillin V Potassium Oral" on March 31, 2014, for a gum infection. This medication caused Plaintiff to suffer upset stomach and diarrhea. Plaintiff submitted a healthcare kite requesting that he be allowed to use the restroom to relieve himself during count after the Corrections Officers had made rounds. Plaintiff received no response. On April 4, 2014, Plaintiff asked Defendant Zimmerman for permission to use the restroom after rounds, but Defendant Zimmerman said "no!" Plaintiff explained that he was on medication which caused diarrhea and that it was an emergency, but Defendant Zimmerman denied his request, stating that he did not "give a fuck." Plaintiff could not wait any longer and began to defecate on himself, so he rushed to the restroom to use the toilet and clean himself up. Defendant Zimmerman stood in front of the stall, and told Plaintiff that he was going to write his "shitty ass" a ticket. Defendant Zimmerman wrote a misconduct on Plaintiff for disobeying a direct order.

On April 13, 2014, Plaintiff discovered insects in his food. Sergeant Cryderman told Plaintiff that he could get a new tray, but when he went back to the chow line, the workers attempted to serve him from the same pots and pans. Therefore, Plaintiff was denied a meal.

On April 23, 2014, Corrections Officer Wallis told Plaintiff that if he agreed to stop pursuing grievances against Defendant Atkinson and other officers he would promise that Plaintiff would be left alone. Plaintiff agreed to think about it. The next day, Plaintiff told Corrections Officer Wallis that he was going to proceed with his complaints, and Corrections Officer Wallis stated "I tried to warn you nicely." When Plaintiff returned to his cell from healthcare, he noticed that his locker was wide open. His cell mate told him that Corrections Officer Wallis had looked in Plaintiff's locker and had not looked in anyone else's locker. Later that day, Plaintiff discovered that Corrections Officer Wallis had packed up all of Plaintiff's property in a dufflebag. Corrections

Officer Wallis stated that it was a mock pack-up to make sure everything fit. When Plaintiff asked why he had packed up without Plaintiff being present, Corrections Officer Wallis stated "Because I can." Plaintiff called his family to report the problem and when Corrections Officer Wallis saw him on the phone, he stated "Go cry to your mommy!" When Plaintiff hung up the phone, Corrections Officer Wallis said he would show Plaintiff what happened to people who filed complaints on them. Corrections Officer Wallis began pushing Plaintiff toward the empty office of Defendant Suriano. Plaintiff refused to go into the office and Corrections Officer Wallis grabbed him, Plaintiff could smell alcohol on his breath. Plaintiff pulled away with his hands in the air and refused Corrections Officer Wallis' order to go into the office away from cameras and witnesses, stating that he was not going to let himself be hurt or set up. Corrections Officer Wallis became extremely violent, screaming at Plaintiff to put his hands down. Defendant Reynolds arrived but he merely stood and observed and did nothing to calm the situation. Plaintiff asked for a supervisor so he could report the incident, but Defendant Reynolds stated, "Fuck you! Get one yourself when the yard opens, I'm not calling anybody for you, bitch!"

In the afternoon, Plaintiff spoke to Defendant Johnson about Corrections Officer Wallis. Defendant Johnson stated that he would call Defendant Suriano and that Plaintiff should go talk to him. As soon as Defendant Suriano saw Plaintiff approaching, he stated that he was not going to deal with that "shit" and that Plaintiff should "get the fuck out of" his office. Plaintiff later reported the incident to his mother and sister, who called prison administration and reported it. At 6:05 pm, Defendant McClean told Plaintiff that he should call his mother and tell her that there was nothing he could do for Plaintiff.

On April 25, 2014, Plaintiff received a ticket fabricated by Corrections Officer Wallis,

7

which asserted that Plaintiff had refused to give him some headphones. Plaintiff states that he never possessed any headphones to give. Plaintiff subsequently made a complaint to the Michigan State Police regarding the continued harassment by Corrections Officer Wallis via a three way call with the police, himself and his sister. Because Plaintiff made the three way call, he was sanctioned with 30 days loss of privileges. On April 26, 2014, Plaintiff discovered that much of the legal material he had prepared was missing. On April 30, 2014, Plaintiff's appeal of the three way call sanction was denied and he was given 45 days of phone restrictions by Defendant Suriano. Defendant Suriano told Plaintiff that he would not be able to call anyone, including his attorney. Plaintiff was subsequently denied the ability to call either his criminal or civil attorney, despite the fact that he requested permission to call both attorneys.

On May 24, 2014, and May 27, 2014, Inmate Kenny Dancy allowed Plaintiff to use his PIN number to make phone calls. On May 27, 2014, Defendant MacClean coerced Inmate Dancy into accusing Plaintiff of stealing his PIN number. However, Inmate Dancy later admitted that Defendant MacClean had threatened to have him put in "the hole," so Plaintiff was found not guilty of the misconduct. On May 30, 2014, Inmate Dancy told Plaintiff that Defendant Suriano and other officers were discussing ways to get rid of Plaintiff and that Defendant Suriano had suggested planting a knife in Plaintiff's cell. Plaintiff wrote a letter informing his psychiatrist Klein of the threat.

On June 4, 2014, Defendant Suriano gave Plaintiff a ticket fabricated by Corrections Officer Wallis for possession contraband. Plaintiff did not challenge the ticket because he feared that would cause further retaliation. On June 5, 2014, Defendant Lewis came to the call and told Inmate Dancy to pack up because he was being moved to administration. Defendant Lewis then told

Plaintiff that he was being called out to "the psych." Plaintiff states that when he arrived at her office, Ms. Klein showed him the letter he had written and informed him that it had been opened before she received it. Klein stated that she had never seen that done before and did not understand why it had been opened.

Plaintiff states that he continuously received threats from Defendant MacClean and towards the end of July, Plaintiff went to Defendant Suriano and asked to be moved. Defendant Suriano denied Plaintiff's request. On July 28, 2014, Plaintiff asked Defendant Esslin to move him away from Defendant MacClean, but she refused. When Plaintiff pleaded with her, she ordered him to return to his cell. However, when Plaintiff complied, she ordered him to stop and had him placed in handcuffs and taken to segregation. Plaintiff later received a ticket for disobeying a direct order, stating that Plaintiff had refused to lock down and was unmanageable. Plaintiff's witnesses were not allowed to answer questions relevant to Plaintiff's defense and he was found guilty. Plaintiff appealed unsuccessfully. Plaintiff wrote a grievance on Defendants MacClean, Suriano, and Esslin, which was denied at each level. On August 15, 2014, Defendants Malette, Benard and Olson transferred Plaintiff from Kinross Correctional Facility to Chippewa Correctional Facility (URF), an alternative level II facility, stating that Plaintiff had "worn out his welcome."

Plaintiff claims that Defendants violated his rights under the First, Sixth, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

> II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept.*

*of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

        Plaintiff has not alleged facts establishing that Defendants MacLaren, Belinger, Corrigan, Heyns, Louri, Decker, Mavi, Suite, Reynolds, Unknown Health Care Parties, and Unknown Mailroom Employee were personally involved in the activity which forms the basis of his claim. The only roles that Defendants MacLaren, Belinger, Corrigan, Heyns, Louri, Decker, Mavi, Suite, Reynolds, Unknown Health Care Parties, and Unknown Mailroom Employee had in this action, if any[1], involved the denial of administrative grievances or the failure to act. These Defendants cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants MacLaren, Belinger, Corrigan, Heyns, Louri, Decker, Mavi, Suite, Reynolds, Unknown Health Care Parties, and Unknown Mailroom Employee are properly dismissed for lack of personal involvement.

        Plaintiff claims that Defendant Rafaele conducted a hearing on the "accomplice to out of place" misconduct and refused to allow Plaintiff witnesses in the hearing. Plaintiff further

---

[1] In fact, Plaintiff has failed to allege any specific facts at all with regard to Defendants Belinger, Corrigan, Heyns, Louri, Decker, Mavi, Suite, and Unknown Mailroom Employee.

states that Defendant Rafaele improperly found him guilty of the misconduct. The Sixth Circuit, recognizing that a Michigan hearings officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled to absolute judicial immunity from damages in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same). Plaintiff's action fails because Defendant Rafaele is absolutely immune from suit for damages under the circumstances of this case.

Moreover, injunctive relief is not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, his claim for injunctive relief is barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

Plaintiff claims that Defendants Olson, Benard, and Malette improperly transferred him from the Kinross Correctional Facility (KCF) to the Chippewa Correctional Facility (URF) in retaliation for filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must

establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Plaintiff, however, cannot show that his transfer to URF was an adverse action taken against him because of his conduct in filing grievances. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held

14

that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill*, 630 F.3d at 468.

Plaintiff's transfer was from one level II facility to another level II facility. Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that his access to the courts was compromised as a result of the transfer. Therefore, Plaintiff's retaliatory transfer claims against Defendants Olson, Benard, and Malette are properly dismissed. However, Plaintiff's remaining retaliation claims are not clearly frivolous and may not be dismissed on initial screening.

Plaintiff appears to be claiming that Defendants Atkinson violated his First Amendment right of access to the courts because of the manner in which she scheduled his teleconference in relation to a deposition of parties in a civil case he was pursuing. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

In this case, Plaintiff fails to allege any facts showing that Defendant Atkinson's conduct in scheduling the teleconference result in any actual injury to his litigation. Therefore, Plaintiff's access to courts claim against Defendant Atkinson is properly dismissed.

Plaintiff claims that Defendants violated his rights under the Sixth Amendment. The Sixth Amendment protects a person's right to counsel in all criminal proceedings. U.S. CONST. amend. VI. The Sixth Amendment does not give an inmate the right to counsel in civil proceedings. Plaintiff fails to allege that he was denied counsel in a criminal proceeding. Therefore, his Sixth Amendment claim against Defendants are properly dismissed.

Plaintiff also claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those

convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Plaintiff in this case fails to allege facts showing that he faced such a risk to his health or safety. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

Finally, Plaintiff claims that Defendants' conduct violated his Fourteenth Amendment due process rights. Throughout his complaint, Plaintiff asserts that he received false misconduct tickets and that he was found guilty of many of the charges in violation of his due process rights.

17

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.*

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011).  In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff has not identified any significant deprivation arising from his convictions.  Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails.  *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).  Moreover, the court notes that Plaintiff was found "not guilty" of misconduct tickets on at least two occasions discussed above.  Therefore, the court concludes that Plaintiff's due process claims are properly dismissed.

Finally, the court notes that Plaintiff's retaliation claims against Defendants Frazier, Carrick, Zimmerman, Parr, Cowan, Nettleston, MacClean, Suriano, Lewis, Chappa, Esslin, Johnson, and McClean are nonfrivolous and cannot be dismissed on initial review.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Atkinson, Unknown Health Care Parties, Rafaele, MacLaren, Reynolds, Olson, Benard, Malette, Belinger, Corrigan, Heyns, Louri, Decker, Mavi, Suite, and Unknown Mailroom Employee will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e, as will Plaintiff's Sixth, Eighth and Fourteenth Amendment claims against all Defendants.  The Court will serve the complaint with regard to Plaintiff's retaliation claims against Defendants Frazier, Carrick, Zimmerman, Parr, Cowan, Nettleston, MacClean, Suriano, Lewis, Chappa, Esslin, Johnson, and McClean.

An Order consistent with this Opinion will be entered.


Dated:  1/23/2015                                             */s/ R. Allan Edgar*
                                                                         R. ALLAN EDGAR
                                                                         UNITED STATES DISTRICT JUDGE